IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

HOWELL W. WOLTZ,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        Civil Action No. 5:11-0908
                                    )
THOMAS CARTER, *et al.*,            )
                                    )
        Defendants.                 )

## PROPOSED FINDINGS AND RECOMMENDATION

Defendants have filed a Motion to Dismiss, or in the Alternative, Motion for Summary

Judgment and Memorandum in Support. (Document Nos. 10 and 11.) Plaintiff has filed a Response.

(Document No. 16.) Additionally, Plaintiff has filed a Motion for Injunctive Relief. (Document No.

18.) Having thoroughly examined the record and considered the applicable legal standards, the

undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment (Document No. 10.), be granted.

## BACKGROUND

Plaintiff, represented by attorney Jeffery T. Mauzy[1], filed his Complaint on November 15,

2011, naming as Defendants, administrative employees of the Bureau of Prisons at FCI Beckley, as

follows: (1) Case Manager Thomas Carter, (2) Unit Manager Michael Snow, (3) Camp

Administrator Brigette Seafus, (4) Assistant Warden Sean Marler, (5) Warden Joel Ziegler, (6)

Counselor Timothy Painter, (7) Education Advisor Barbara Fletcher, (8) Psychologist Advisor

---

[1] It appears that Mr. Mauzy continues to represent Plaintiff. Attorney Thomas A. Rist noted his appearance as Plaintiff's attorney on December 7, 2011 (Document No. 4.), and filed a Motion to Withdraw on February 23, 2012 (Document No. 13,) The District Court granted Mr. Rist's Motion on February 24, 2012. (Document No. 17.)

Michael Murry. (Document No. 1.)[2] Plaintiff alleges that the Defendants violated his constitutional rights under the First, Fifth, Sixth and Fourteenth Amendments of the United States Constitution to due process, equal protection, access to the Courts and counsel and free speech.[3] Specifically, respecting his claim that Defendants violated his right to due process, Plaintiff claims that according to Bureau of Prisons rules, regulations and policy, his unit team consisting of his unit and case managers, education advisor and unit psychologist is required to meet with him twice a year respecting his custody classification and complete a form indicating the results of its custody classification review annually. Plaintiff claims that in August, 2010, Defendants who were members of his unit team violated Bureau of Prisons rules, regulations and policy by requiring him to sign an Inmate Skills Development Plan [ISDP] before the meeting and holding meeting without notifying him and without any of them in attendance. (Id., ¶¶ 27 - 31.) Plaintiff complains that the "official government ISDP document contained significant fraud and false claims not found in the Pre-Sentence Report" including that he had outstanding traffic violations and a drinking problem,  was a victim of emotional distress, did not communicate with a parent and had a fair work record when his supervisor indicated that his work record was outstanding. (Id., ¶ 32.) Plaintiff claims that acting on the basis of this false information his unit team recommended him for 60 to 90 days of residential reentry center [RRC] placement or direct home confinement on August 11, 2012. Plaintiff states that

_____

[2] Plaintiff has sued Defendants Carter, Snow, Seafus, Marler and Ziegler in their official and individual capacities and Defendants Painter, Fletcher and Murry in their official capacities. (Document No. 1, ¶¶ 82 (Defendant Painter), 85 (Defendant Fletcher), 88 (Defendant Murry), 194 and 195.)

[3] Plaintiff attaches 36 Exhibits to his 196 paragraph Complaint including copies of documents pertaining to his custody classification as a federal convict, his exhaustion of administrative remedies and communications in writing with Defendants about the matters about which he complains in this case.

"[i]n spite of threats and actual retaliation for refusing, Plaintiff has consistently stated that he would not go to an RRC (halfway house), for clearly articulated reasons, since his arrival on February 8, 2008." (Id., ¶ 33.) Plaintiff contends that "[t]he falsified records had the intended result of preventing Plaintiff's earned increase liberty interest. Plaintiff's proper scoring . . ., if based solely on truthful information, would have required 'Unit Team' to consider change of custody status to 'community custody' at that time, but he was denied due process by knowing fraud of defendants . . . or by failure to perform required duties." Id., ¶ 34. Plaintiff goes on to claim that at unit team meetings in February and August, 2011, Defendants refused to correct the false information in the ISDP and committed the same violations of Bureau of Prisons rules, regulations and policy. Plaintiff claims that he notified all of the Defendants of the circumstances. (Id., ¶¶ 37 - 88.) Plaintiff alleges that "[w]hile there is no guarantee of custody-level status, or its benefits, there is a process which determines such consideration, and through fraud, false claims, and denial of Bureau of Prisons policy-driven mandates of due process, Plaintiff has been denied these considerations." (Id., ¶ 65.)

Respecting his claim that Defendants violated his right to equal protection, Plaintiff indicates that, using the false information referenced above, Defendants Carter, Snow, Seafus and Marler retaliated against him for resorting to the Court for relief from their violations of his rights by (1) denying him a furlough when his mother became ill and died when other inmates were granted furloughs under the same circumstances (Id., ¶¶ 90 - 95.); (2) terminating his job as clerk of general maintenance in January, 2011 (Id., ¶¶ 96 - 104.); and (3) falsely charging him in an incident report with communicating with an inmate when he received a letter from an inmate as it was forwarded by a law firm to him and then after disciplinary proceedings, raising his custody level (Id., ¶¶ 106 - 117.). Plaintiff claims that "Defendants Carter, Snow, Seafus, and Marler have subjected Plaintiff

to unequal treatment by citing him for charges which do not exist, by meting out punishments never before rendered, and by denying him a furlough while three others in the same circumstances were granted them." (Id., ¶ 127.) Thus, in addition to claiming that Defendants violated his right to equal protection, Plaintiff contends that Defendants violated his right to due process and retaliated against him for seeking relief against them in Court. (Id., ¶ 135.)

Respecting his claim that Defendants violated his right of access to the Court and counsel, Plaintiff claims that Defendants opened and tampered with his mail to and from the Courts and legal and special mail in violation of Bureau of Prisons regulations and denied him administrative remedy forms. (Id., ¶¶ 148 - 164.) Plaintiff further claims that Defendants have (1) assaulted and battered him twice for having an attorney visit him (Id., ¶ 166.), (2) prevented lawyers who agreed to represent him from meeting with him (Id., ¶ 168.) and refused to provide a list of attorneys who might represent him as required by Bureau of Prisons policy (Id., ¶¶ 169 - 170). Plaintiff alleges that Defendants' conduct also violates his right to due process and equal protection. (Id., ¶ 174.)

Respecting his claim that Defendants violated his right to free speech, Plaintiff contends that as he was attempting to publish a book, Defendants stole copies of his original manuscript from a mail receptacle and tampered with his mail causing the resignation of his editor, failed communications and delays in the publishing of his book. (Id., ¶¶ 180 - 192.) Plaintiff demands declaratory relief, nominal, compensatory and punitive damages and attorney's fees and expenses. (Id., ¶¶ 193 - 196.)

Defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support on February 10, 2012. (Document Nos. 10 and 11.) They contend that (1) Plaintiff's claims against them in their official capacities are barred under the

4

doctrine of sovereign immunity; (2) Plaintiff failed to exhaust administrative remedies; (3) the doctrine of *respondeat superior* does not apply in <u>Bivens</u> actions such as this; (4) Plaintiff's allegations do not indicate violations of his constitutional rights; and (5) they are entitled to qualified immunity. Respecting their claim that the doctrine of sovereign immunity bars Plaintiff's claims against them in their official capacities, Defendants assert that Plaintiff's action against Defendants Painter, Fletcher and Murry must be dismissed because Plaintiff has sued them only in their official capacities. (Document No. 11, p. 3.) Respecting their claim that Plaintiff has failed to exhaust administrative remedies, Defendants assert that Plaintiff has exhausted administrative remedies respecting his claim that they are opening and tampering with his mail thereby interfering with his right of access to the Courts and his claim that they have determined his custody classification based upon false information.[4] (<u>Id.</u>, pp. 5 - 6.)Defendants claim that Plaintiff has not exhausted administrative remedies respecting his claims that they made out a false incident report against him and held disciplinary proceedings which impacted his custody classification, opened his outgoing mail unlawfully, prevented meetings with his attorneys and have no list of *pro bono* attorneys in the prison's law library as required. (<u>Id.</u>, pp. 6 - 7.) Respecting their claim that the doctrine of *respondeat superior* does not apply in this <u>Bivens</u> action, Defendants assert as to Defendants Ziegler, Marler and Seafus that "[t]o the extent Plaintiff does not allege personal involvement by these supervisory officials, his claims against them must be dismissed." Respecting their claim that Plaintiff's allegations do not indicate violations of his constitutional rights, Defendants state that on February 25, 2011, Plaintiff's unit team recommended home detention, but the Bureau of Prisons

---

[4] Defendants attach as Exhibit 1 to their Memorandum in Support the Declaration of Sarah Lilly, the Legal Assistant for the Beckley Consolidated Legal Center, identifying which of Plaintiff's claims in this matter were exhausted and which were not.

Community Corrections Management [CCM] determined that Plaintiff should be placed in an RRC beginning in mid-February, 2012. Plaintiff refused the RRC placement which affected his custody classification.[5] (Id., p. 9.) Defendants further assert that Plaintiff has no constitutional right as a federal prisoner to any custody classification and placement in any facility or on home confinement and therefore has no due process right in the process through which custody classification and placement are determined. (Id., pp. 9 - 11.) Respecting Plaintiff's claim that Defendants denied him a furlough in violation of his right to equal protection, Defendants assert that (1) Plaintiff has no constitutional right to a furlough, (2) furlough was not denied because of his custody status but because of his incident reports, (3) his status was not the same as the other inmates he mentions because he had a disciplinary record and they did not and (4) he did not exhaust administrative remedies in complaining about Defendant's denial of furloughs. (Id., pp. 11 - 12.) Defendant's further assert that no constitutional right is implicated in Plaintiff's claim that Defendant's made out a false incident report and disciplined him based upon the false charges and state further that "Plaintiff was appropriately disciplined for abusing the mail system. Plaintiff was found to have committed the infraction by the UDC and he has not challenged that finding in any court." (Id., pp. 12 - 14.) Defendants further assert that Plaintiff had no constitutional right with respect to any specific prison job.[6] (Id., pp. 14 - 15.) Respecting Plaintiff's claim that Defendants have retaliated

---

[5] Defendants attach as Exhibit 2 to their Memorandum in Support the Declaration of Defendant Snow, a Unit Manager at FCI Beckley, explaining that Plaintiff refused RRC placement which affected his custody classification and further stating the circumstances underlying the incident report and disciplinary proceedings and how these circumstances affected the decision not to permit Plaintiff to have an emergency furlough to visit his mother.

[6] Defendants attach as Exhibit 3 to their Memorandum in Support the Declaration of Defendant Seafus. Defendant Seafus states that "In January 2011, inmate Woltz complained that the library was not open late enough for him to do his legal work. To accommodate inmate Woltz's

against him for alleging their unlawful conduct and seek relief against them and other employees

of the Bureau of prisons in Court, Defendants assert that Plaintiff must establish that they retaliated

against him for attempting to exercise a constitutional right and cannot do so and in any event his

claims are "bare assertions" of retaliation. (Id., p. 15.) Respecting Plaintiff's claim that Defendants

have infringed upon his constitutional right of access to the Courts, Defendants assert that Plaintiff

cannot demonstrate that he has sustained any actual injury as a consequence of their conduct and

therefore his claim fails.[7] (Id., pp. 16 - 17.) Respecting Plaintiff's claim that they violated Bureau

of Prisons rules, regulations and policy in determining his custody classification and in disciplinary

proceedings, Defendants assert that "a violation of a BOP policy does not translate into a

constitutional violation and is not cognizable in a Bivens action." (Id., p. 17.) Addressing Plaintiff's

claim that they entered false information in a custody classification document, Defendants urge that

"Plaintiff's claim needs to be brought as a claim under the Privacy Act." Defendants then claim that

the Bureau of Prisons has exempted itself from the accuracy, access and amendment requirements

of the Act and the civil remedies provisions with respect to inmate records. (Id., pp. 18 - 19.) Finally,

Defendants assert that because Plaintiff cannot demonstrate that they violated any constitutional

right by their conduct, they have qualified immunity. (Id., pp. 19 -20.)

  Plaintiff filed his Response *pro se* including a Memorandum of Law on February 24, 2012.

(Document No. 16.) Citing Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759

---

desire for additional time in the law library, I authorized inmate Woltz to be assigned to another job
that did not start until the evening. The job reassignment was to allow inmate Woltz more time in
the law library."

 [7] Defendants attach as Exhibit 4 to their Memorandum on Support a five-page chart
indicating Plaintiff's "Litigation History" in this and other federal Courts.

(1998), Plaintiff appears to argue that given his allegations of constitutional violations, dismissal or summary judgment on grounds of immunity is inappropriate without allowing discovery. (Id., pp. 4 - 8.) Respecting Defendants' assertion that his claim that they violated Bureau of Prisons rules, regulations and policy does not plead a constitutional violation, Plaintiff states that "42 U.S.C. § 1983 does not recognize the Defendants' position."[8] (Id., p. 8.) Plaintiff cites the United States Supreme Court's decision in United States ex rel. Accardi v. Shaughnessy, 347 U. S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), and the Fourth Circuit's decision in United States v. Heffner, 420 F.2d 809 (4th Cir. 1969), claiming that "[w]hen a government agency does not follow its rules, regulations, or procedures, due process is violated and its action cannot stand."[9] (Id., p. 10.) Respecting Defendants' claim that he failed to exhaust administrative remedies respecting some of his claims, Plaintiff states that the administrative remedy process was not available until March 7,

---

[8] 42 U.S.C. § 1983 is inapplicable in this matter. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254 - 2255, 101 L.Ed.2d 40 (1988). Section 1983, therefore, only applies to state actors. It does not apply to federal officials acting under color of federal law. Obviously, the standard for claims against state actors under Section 1983 was established by Congress. The standard for claims against federal actors under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971), was created judicially.

[9] Plaintiff cited the *Accardi* doctrine in *Woltz v. Scarantino*, Civil Action 5:10-0095, to no avail. *Woltz v. Scarantino*, 2011 WL 1229994 * 6 (S.D.W.Va.)(District Judge Berger). The *Accardi* doctrine is inapplicable in inmates' *Bivens* cases against Bureau of Prisons employees. The Supreme Court stated in *Accardi*, 347 U.S. at 265, 74 S.Ct. at 502, that "[t]he crucial question is whether the alleged conduct . . . deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto." As the undersigned has recently noted in another lawsuit which Plaintiff has initiated, it is well established that Bureau of Prisons rules, regulations and policies respecting custody classification and home confinement do not provide inmates with any constitutionally protected and enforceable interests. *Woltz v. Ziegler*, 2012 WL 1599916 at fn. 3 (S.D.W.Va.).

2011, and he exhausted the administrative remedies which were available. (Id., pp. 11 - 12.) In addressing Defendants' claims of immunity, Plaintiff concedes that Defendants Fletcher, Painter and Murry, who were sued in their official capacities, must be dismissed as Defendants." Plaintiff further concedes that Defendant Ziegler is immune "if he can prove that the issues raised in the suit were unknown and unsuborned by him". (Id., p. 13.) Plaintiff contends that other Defendants cannot claim immunity because "[t]hey directly participated in unlawful actions which took them far outside the law and the Code of Regulations by which they are required to abide, at which time they ceased to represent the government or enjoy its protections." (Id., pp. 13- 14.) Plaintiff does not address Defendants' assertions that he has no right protected by the United States Constitution in the process by which his custody classification, placement on home confinement, entitlement to furlough or job assignment is determined and does not refute the statements contained in their Declarations or challenge Defendants' response respecting his equal protection, access to the Courts and counsel claims.

Plaintiff filed his *pro se* Motion for Injunctive Relief on March 15, 2012. (Document No. 18.) Plaintiff requests the Court's issuance of an injunction prohibiting Defendants from opening and copying his Court and special mail and requiring that Defendants' act in conformity with all applicable rules, regulations and policies. Defendants have not filed a response to Plaintiff's request for injunctive relief.

## **THE STANDARD**

### **Motion to Dismiss Under Rule 12(b)(6).**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. *See* Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d  340 (1992).

**Summary Judgment.**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims,

the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

As Plaintiff alleges violations of his constitutional rights, Plaintiff's action clearly fall under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the

federal counterpart of a State action under 42 U.S.C. § 1983. The standard for <u>Bivens</u> actions is well-defined and clear. Plaintiffs asserting claims under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. Thus, plaintiffs may bring actions for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. The allegation and proof of an actual injury and causation between the officials' conduct and the alleged injury is necessary for there to be liability. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996)("A prisoner must also identify an actual injury resulting from official conduct. <u>Strickler v. Waters</u>, 989 F.2d 1375, 1382 - 85 (4th Cir.), <u>cert. denied</u>, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) A showing of injury is required in order to avoid trivial claims of deprivation."); <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1991)("In <u>Strickler</u>, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the Eighth Amendment.")

An inmate may name a federal officer in an individual capacity as a defendant in alleging a constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims for money damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Doe v. Chao</u>, 306 F.3d 170, 184 (4th Cir. 2002)("[A] <u>Bivens</u> action does not lie against either agencies or officials in their official capacities."); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Such claims are barred by operation of the doctrine of sovereign immunity. <u>McClosky v. Mueller</u>, 446 F.3d 262, 271 - 272 (1st Cir. 2006)("The <u>Bivens</u> doctrine . . . does not override bedrock principles of sovereign immunity so as to permit suits against the United

12

States, its agencies, or federal officers sued in their official capacities.") Furthermore, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to <u>Bivens</u> . . ., a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); <u>see also</u> <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001), <u>cert. denied</u>, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In a <u>Bivens</u> suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)). Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984)<u>, cert. denied</u>, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" <u>Id.</u> at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. <u>Id.</u> A supervisor's mere knowledge of a subordinate's unconstitutional conduct is therefore not enough. Rather, <u>Bivens</u> liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." <u>Ashcroft v. Iqbal</u>, 556 U.S. at , 129 S.Ct. at 1949.

Federal officials sued under <u>Bivens</u> may assert qualified immunity as a defense. Federal

officials performing discretionary functions are generally protected from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). In Harlow, the United States Supreme Court stated that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may determine

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

Harlow, 457 U.S. at 818. In Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), the Court specified a two-step process for considering qualified immunity claims stating that "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. * * * If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." The Court recently relaxed this standard in Pearson v. Callahan, 555 U.S. 223, 236 - 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") Importantly, issues of qualified immunity should be resolved "at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. at 232, 129 S.Ct. at 815, quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

### Exhaustion of Administrative Remedies.

Defendants acknowledge that Plaintiff has exhausted administrative remedies respecting his claims that they are opening and tampering with his mail thereby interfering with his right of access to the Courts and that they have determined his custody classification based upon false information. Defendants claim that Plaintiff has not exhausted administrative remedies respecting his claims that they made out a false incident report against him and held disciplinary proceedings which impacted his custody classification, opened his outgoing mail unlawfully, prevented meetings with his attorneys and have no list of *pro bono* attorneys in the prison's law library as required. Federal inmates must exhaust available administrative remedies before they can proceed in Court with their Bivens claims. Woltz v. Scarantino, 2011 WL 1229998 * 5 - 7 (S.D.W.Va.). Plaintiff claims that Defendants prevented him from exhausting administrative remedies by denying him administrative remedy forms and he exhausted all available administrative remedies. Because all of Plaintiff's allegations relate generally to his custody classification and right of access to the Courts claims, the undersigned will regard them all as exhausted and consider them on their merits in view of Defendants' defenses.

### Sovereign Immunity.

Clearly under the standard stated above and in view of Plaintiff's concession that his claims against Defendants Fletcher, Painter and Murry should be dismissed, Plaintiff's claims of liability

respecting all of the Defendants in their official capacities must be dismissed and Defendants Fletcher, Painter and Murry must be dismissed as Defendants in this matter because Plaintiff has sued them only in their official capacities.

**Qualified Immunity.**

As stated above, the first consideration in determining if the remaining Defendants Carter, Snow, Seafus, Marler and Ziegler have qualified immunity in this matter is whether, Plaintiff's claims taken as true, these Defendants can be found to have violated Plaintiff's constitutional rights. It is well established that Congress has delegated inmates' custody classification and placement in Bureau of Prisons programs and facilities to the full discretion of federal prison officials. See Moody v. Daggett, 429 U.S. 78, 88 fn. 9, 97 S.Ct. 274, 279 fn. 9, 50 L.Ed.2d 236 (1976); Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). It is therefore clear that determining custody classification and placement in Bureau of Prisons programs and facilities is a discretionary function of Bureau of Prisons officials. It is further well established that inmates have no liberty or due process rights with respect to the Bureau of Prisons' determinations in these regards. The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . .  And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4ᵗʰ Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5ᵗʰ Cir. 1995)(finding that "a prison inmate does not have a protectible liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal

dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Clearly, therefore, Plaintiff fails as a matter of law to state a claim that his constitutional rights were violated in Defendants determination of his custody classification and placement. It makes no difference that the Defendants relied on false information in determining his custody classification. Plaintiff's claim in this regard falls under the Privacy Act, and documents pertaining to his custody classification are exempt under that Act. See Blanton v. Warden, 2011 WL 1226010 (W.D.Va.)("The BOP exempted itself entirely from the access and amendment requirements and the civil remedies of the Privacy Act about inmate records."); Thomas v. Caraway, 2011 WL 2416643 (D.Md.)("As the system of records which contains petitioner's custody classification form is exempt from the requirement of the Privacy Act, his claim must be dismissed.") Finally, the United States Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Courts accord prison officials substantial deference in the exercising of their professional judgment in administering the order, discipline and security of prisons. Beard v. Banks, 548 U.S. 521, 528, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006). Because, taking Plaintiff's claims as true, Defendants' conduct cannot be found to have violated Plaintiff's statutory or constitutional rights, Defendants are entitled to qualified immunity.

**Equal Protection.**

Viable equal protection claims are based upon allegations that similarly situated individuals

are treated differently without a rational relationship to a legitimate governmental purpose. In order to state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff. Johnson v. California, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005). Plaintiff's complains that Defendants treated *him* differently than other inmates. This clearly does not present a cognizable equal protection claim. There is no indication that Defendants made it a practice to prefer a certain class of inmates over others. Thus, the undersigned concludes that Plaintiff's claim that Defendants violated his right to equal protection is insufficient and does not state a claim for which relief can be granted.

**Retaliation and Access to Courts.**

To state a claim of retaliation in violation of First Amendment rights under Bivens, an inmate must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. A claim of retaliation that fails to implicate any constitutional right 'lacks even an arguable basis in law,' [Neitzke, 490 U.S.] at 328, 109 S.Ct. at 1833, and is properly subject to dismissal under § 1915(d)." Adams, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 F.2d 227 (1995). Thus, an inmate must allege facts specifically indicating that prison officials retaliated against him for exercising a constitutional right. Finally, an inmate must allege facts indicating that the retaliatory acts actually impacted his exercise of the constitutional right. American Civil Liberties Union of Maryland v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993)("Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.") Bare assertions of retaliation do not rise to the level of a constitutional violation. See Adams, 40 F.3d at 74; White v. White, 886 F.2d 721, 723 (4th Cir.

1989). Plaintiff alleges that Defendants retaliated against him in violation of his constitutional right of access to the Courts for alleging in Court proceedings that they have acted unlawfully by using false information in considering his custody classification, denying him a furlough, initiating disciplinary proceedings against him and terminating his employment. As the undersigned has found before, see Woltz v. Scarantino, 2011 WL 1229998 at * 7 (S.D.W.Va.), assuming that Defendants have retaliated against Plaintiff for initiating lawsuits against them, Plaintiff has nevertheless initiated numerous suits and appeals while he has been incarcerated as is evident from Defendants' five-page chart indicating Plaintiff's "Litigation History" in this and other federal Courts attached as Exhibit 4 to their Memorandum in Support of their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. It therefore does not appear that Plaintiff can demonstrate that Defendants retaliatory acts, if any, impacted his right of access to the Court, and his retaliation claim should be dismissed.

**Plaintiff's Right of Free Speech.**

Plaintiff claims that Defendants stole copies of an original manuscript of a book which he was seeking to publish from a mail receptacle and tampered with his mail respecting the book's publication in violation of his constitutional right of free speech. Plaintiff has not submitted any evidence supporting his allegations, and therefore they are bare and unsubstantiated. Moreover, it appears that the book's publication may have been delayed but was not prevented altogether by Defendants' alleged conduct, and therefore Plaintiff's right of free speech was not impacted. For these reasons, this claim should be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 10.), **DISMISS** this matter and remove it from the docket of this Court.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who has filed documents *pro se*, and transmit a copy to counsel of record.

Date: August 8, 2012.

R. Clarke VanDervort
United States Magistrate Judge

20